UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SAMANTHA D., : | |
|     Plaintiff, : | |
| : | |
|     v. : | C.A. No. 22-464MSM |
| : | |
| MARTIN O'MALLEY, : | |
| Commissioner of Social Security, : | |
|     Defendant.[1] : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Samantha D., a "younger" individual, is a high school graduate who had worked at a donut shop for three years until October 23, 2020. She occasionally drives, shops in stores and regularly visits her mother to visit and clean (vacuum and do dishes) for her. On December 9, 2020, alleging bipolar disorder, depression, anxiety and diabetes, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"). As reflected in the record assembled for these applications, prior to the period in issue, Plaintiff suffered from substance-use disorder and now receives prescribed medically assisted treatment (suboxone); however, substance use is not in issue as Plaintiff had not been using controlled substances for many years prior to her application. Plaintiff's date-last-insured is March 31, 2024. Tr. 17.

Now pending before the Court is Plaintiff's motion for reversal of the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications. Wielding an argument that has repeatedly been rejected by this Court, Plaintiff contends that the administrative law judge ("ALJ") erred in relying on the non-examining experts at Step Two and

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley has been substituted for Acting Commissioner Kilolo Kijakazi as the Defendant in this action.

in formulating an RFC[2] because such reliance is prohibited by a regulation that she interprets as classifying such findings as inherently unpersuasive and not valuable.[3] More substantively, Plaintiff contends that the Step Two file-reviewing physicians (Drs. William Mason and Mitchell Pressman), despite acknowledging Plaintiff's ongoing "poor [insulin] control," did not consider post-file review records that reflect Plaintiff's ongoing struggle with diet and insulin control. Plaintiff also argues the ALJ erred both in relying on the file reviewing psychologists because they did not adequately address Plaintiff's panic attacks and in discounting Plaintiff's subjective statements about her symptoms. Defendant has filed a counter motion for an order affirming the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I.  **Background**

During the period in issue, Plaintiff was diagnosed with bipolar disorder, mood cycling and panic attacks, as well as ADHD; she received mental health medication management from a nurse, N. Allison, PCNS, and therapy from a social worker, Linda Cardillo, LICSW. E.g., Tr. 308, 310-11, 319. She saw each of them monthly or less frequently. The record mentions past mental health hospitalizations at a time when Plaintiff was actively using controlled substances,

---

[2] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[3] This argument was carefully considered and rejected in Elizabeth L. v. Kijakazi, C.A. No. 23-00008-WES, 2023 WL 5035123, at *7-8 (D.R.I. Aug. 8, 2023), adopted by text order, (D.R.I. Aug. 24, 2023). As this Court held in Elizabeth L., at *8, an ALJ "must" consider medical consultants' findings because they are "highly qualified and experts in Social Security disability evaluation"; such findings are not prohibited from the ALJ's consideration pursuant to 20 C.F.R. § 404.1520b(c)(3)(ii) as inherently unpersuasive and not valuable. Id. at *7; see Chad B. v. Kijakazi, C.A. No. 22-228JJM, 2023 WL 6867120, at *2 (D.R.I. Oct. 18, 2023), adopted by text order, (D.R.I. Nov. 2, 2023) (same); Diane K. v. Kijakazi, C.A. No. 22-215WES, 2023 WL 8713695, at *6 & n.8, *8 (D.R.I. Dec. 18, 2023). As in those cases, the version of this argument in this case is unsupported except by Plaintiff's interpretation of the words of the regulations, which has now been rejected in three decisions. In reliance on Elizabeth L., Chad B. and Diane K., I recommend that this latest rendition of the argument be rejected. It will not be discussed further.

but there are no hospitalizations during the period covered by the medical record. Tr. 435-36. For the period in issue, these mental health treating records reflect "mood 'settling' . . . recovery going well," Tr. 310; "[d]oing better with medication changes, continues to work with psych to make needed adjustments," Tr. 338; and "[f]eeling calmer now can manage using coping skills," doing "[o]dd jobs, cleaning . . . [s]pending time with freinds (sic) . . . having more good days than down days," Tr. 457. The treatment notes reflect that, at the alleged date of onset, Plaintiff had been working seven days a week, not taking insulin properly and not eating right; Plaintiff reported to her provider that "her psychiatrist took her out" of work to address these issues. Tr. 343-46; see Tr. 305 (remains out of work to "focus [on] self care"). The social worker's notes consistently reflect Plaintiff's strong commitment to recovery, her confidence in her ability to recover and the lack of barriers to the achievement of her goals. E.g., Tr. 319, 338, 457-58. None of these treating sources have opined regarding limitations caused by Plaintiff's mental health symptoms. A consulting psychologist (Dr. Romina Dragone-Hyde) performed an examination remotely using video conferencing; her report noted Plaintiff's statement that she has diabetes but that it does not cause "additional medical issues," as well as that panic attacks did not begin until after she stopped working and that they occur once a week on Sunday night. Tr. 434, 436. Dr. Hyde opined to a positive prognosis and diagnosed bipolar disorder with moderate depression and anxiety with panic attacks. Tr. 438.

For diabetes and other health needs, Plaintiff received treatment at Thundermist, primarily from a family nurse practitioner, Michelle Blade-Mello, F.N.P. These records reflect Plaintiff's ongoing struggle with insulin control due to the challenges of adherence to prescribed diet and medication (including injectable insulin) regimes; however, they also record that she "has good supports in her life," Tr. 332; "has been doing a lot of work around the house, will

walk the block when bored," Tr. 316; "goal to walk every morning with friend once the weather is nicer," Tr. 317; "started cleaning houses for extra money, new source of movement," Tr. 467; and "walking a lot and taking naproxen with good relief," Tr. 470. As with mental health, no treating source has opined that Plaintiff has any physical limitations caused by diabetes or by any other physical symptoms.

In support of her disability applications, Plaintiff testified that she has daily panic attacks and manic episodes and stays in bed with no shower and wearing the same clothes for four days each week, although she is able to make simple meals, go to her mother's house three (or two) days a week and cleans for her. Tr. 43-48, 51. Regarding diabetes, Plaintiff testified that the only impact was "when I was working, it was harder for me to do my insulin and take my sugars." Tr. 46. In her Function Report, Plaintiff alleged that she is limited in her ability to work by depression and social challenges; that she drives, but "[n]ot often" and that she shops but just at the "pharmacy or corner store." Tr. 240, 243. She claimed that she has reduced memory, concentration, persistence, understanding and ability to follow instructions and get along with others, but no physical limitations. Tr. 245.

The ALJ relied on the record, as well as the prior mostly moderate RFC administrative findings of a state agency psychologist (Dr. Marsha Hahn) and a state agency psychiatrist (Dr. Susan Killenberg), who themselves relied on the record as of the date of their review, as well as on Dr. Hyde's consulting report, to find that Plaintiff has significant mental limitations due to bipolar disorder, depression, anxiety and panic disorder, but that these do not preclude her from working. Tr. 20-25. Specifically considering the degree to which Plaintiff would be off-task, the ALJ discounted Plaintiff's subjective statements to the extent that they were inconsistent with Dr. Hyde's report and the treating record, the Function Report and her own testimony about her

4

activities.  Tr. 23-24.  Regarding Plaintiff's physical allegations (diabetes and substance use disorder), the ALJ found that none of Plaintiff's medically determinable impairments are severe at Step Two.  Tr. 18.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30.  The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Hum. Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3,

2015.  If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits.  Sacilowski v. Saul, 959 F.3d 431, 433, 439-41 (1st Cir. 2020); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021), adopted by text order, (D.R.I. Oct. 28, 2021).

### III.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).[4]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.

---

[4] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set of these regulations.

20 C.F.R. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  20 C.F.R. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

      B.        **Opinion Evidence**

The ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered are supportability and consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 381, 839 (M.D. Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859.  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Id. at 5854.

Medical opinions produced by state agency medical consultants are referred to as "prior administrative medical findings." Elizabeth L., 2023 WL 5035123, at *7. The regulations now require that the ALJ "must" consider persuasiveness of such findings and articulate their consideration under 20 C.F.R. § 404.1520c(b) because the medical consultants making those findings are "highly qualified and experts in Social Security disability evaluation." Id. at *8. Such prior administrative findings may not be disregarded as "inherently neither valuable nor persuasive" pursuant to 20 C.F.R. § 404.1520b(c)(3). Id.

### C. Claimant's Subjective Statements

A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. See Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, statements, and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Id. at *4. As the First Circuit has emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski, 959 F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021). That is, if proof of disability is based on subjective evidence and a credibility determination is critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility "must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (internal

quotation marks omitted); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

## IV. Analysis and Recommendation

### A. Physical Impairments

The ALJ's Step Two determination that Plaintiff does not have significant physical limitations caused by diabetes is amply supported by Plaintiff's testimony during the hearing, her statements in the Function Report, and the entirety of the treating record, as well as by the findings of the non-examining physician experts, Drs. Mason and Pressman, as of the date of their examination that despite "[o]n insulin with poor control," Plaintiff had "no significant medical impairment." E.g., Tr. 73, 83. To rebut this finding, Plaintiff points to a single post-file review note (from September 10, 2021) that reflects Plaintiff's complaint of "more headaches, polydipsia, worsening vision, fatigue" due to hyperglycemia caused by her ongoing struggle with diabetes control, Tr. 460, and argues that remand is required for consideration of post-file review worsening.[5] See Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018).

There are several problems with this argument. First, in the note itself, the nurse practitioner noted that the complaint was related to Plaintiff's ongoing non-adherence to her meal-time insulin regime, but also observed that Plaintiff's functioning was improved – "started cleaning houses for extra money, new source of movement." Tr. 459-60. For treatment, the

---

[5] Citing Tr. 486, Plaintiff also points out that the post-file-review record references the impact of her mental health on her inability to maintain her insulin regime and related dietary prescriptions. ECF No. 9 at 11. However, this is not a Virgen issue – in this case, the interaction between physical and mental impairments pervades the record beginning in the pre-onset period. E.g., Tr. 350-53, 390-94. Further, this also is not a case where limitations arising from the interaction between mental and physical symptoms fell through the cracks. That is, the ALJ acknowledged that Plaintiff's mental impairments caused many limitations, including having an adverse impact on her ability to manage insulin control; however, in reliance on the totality of the record, he also supportably found that the lack of insulin control had not yet resulted in significant physical limitations. Tr. 18.

9

treating nurse practitioner changed nothing in response to these complaints except to continue Plaintiff's education (ongoing throughout the period in issue) on insulin compliance and the use of diet and lifestyle changes to manage her diabetes. Tr. 460 ("encouraged to continue working on switching to complex carbs and incorporate more protein/vegetables"). No follow-up diagnostics were prescribed or suggested based on these symptoms. Second, these symptoms were not confirmed by physical examination at this or at any subsequent appointment – indeed, between September and November (when the ALJ's hearing occurred), Plaintiff did not return to the nurse practitioner or mention these symptoms to any other provider. Nor did Plaintiff mention these symptoms during the ALJ's hearing, which was less than three months later. Specifically, on direct examination by her attorney, Plaintiff was asked to describe "[a]ny problems day-to-day because of diabetes?" and mentioned only the challenge of doing insulin and sugar control while working, Tr. 46, echoing her statement in the Function Report that she has no physical limitations, Tr. 245. Later in the hearing, Plaintiff confirmed that her only symptoms related to her mental health, which had already been discussed. Tr. 50 ("Q. Is there anything we haven't talked about you feel we need to talk about? A. No."). And some of the symptoms listed as "worsening" in Tr. 460 are not new in that they appear repeatedly in the records reviewed by the non-examining physicians. E.g., Tr. 317 (mentions polydipsia and fatigue as symptoms); Tr. 369-70 (symptoms mentioned include burning in legs and feet, fatigue, delayed wound healing, "feels awful," but blurry vision denied). Nor has any source opined that these symptoms – whether new or old – caused functional limitations.

   At bottom, these post-file review records were considered by the ALJ who found: "no additional evidence [beyond what was reviewed by the non-examining physician experts] has been offered that reflects the deterioration of any physical condition or any physical limitation

10

associated with a physical condition and the claimant's testimony greatly indicates that the bulk of her alleged limitations are associated with her mental functioning, not her physical functioning." Tr. 24.  This finding is amply supported by the evidence of Plaintiff's activities,[6] as well as the fact that the complaint of headache and "vision changes" triggered no follow-up and no new treatment or diagnostic inquiry and were not mentioned as symptoms by Plaintiff herself during the hearing that occurred just over two months later.  Also pivotal is that no medical source has translated this complaint into functional limitations and no evidence permits the inference that the potentially new symptoms are serious enough to impact functionality.  See Joseph N. v. Berryhill, C.A. No. 17-375 WES, 2018 WL 2722461, at *7 (D.R.I. June 6, 2018) ("[w]hile Plaintiff has referenced evidence of sensory loss [from diabetes], he fails to establish how these findings establish . . . more restrictive limitations than imposed by the ALJ").  Therefore, Plaintiff has failed to sustain her burden of demonstrating that "the state-agency physicians were not privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions." Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL 39037, at *9 (D.R.I. Jan. 3, 2020) (alterations in original) (internal quotation marks omitted), adopted, 2020 WL 555186 (D.R.I. Feb. 4, 2020).

Based on the foregoing, I do not recommend remand for further proceedings regarding Plaintiff's physical functional limitations during the period in issue.

### B.   Mental Impairments

---

[6] To illustrate, Plaintiff's statements about her post-file-review activities confirm that she was able to go to her mother's house and clean several times a week, Tr. 51, as well as that she was able to do "odd jobs, cleaning," Tr. 457, "walking a lot," Tr. 470; "saving up money for an exercise bike," Tr. 483, and "started cleaning houses for extra money, new source of movement," Tr. 467.

Plaintiff has also failed to sustain her burden of establishing that her RFC is more limited than the moderate mental limitations assessed by the ALJ. Indeed, she concedes as much in her brief, in which she argues that her MSEs[7] "regularly show moderate [mental] limitations," ECF No. 9 at 13, which is precisely what the ALJ found. To buttress her argument, Plaintiff contends that remand is required because the record does not contain any evidence about the frequency and duration of her panic attacks apart from her testimony that they occurred daily and precluded any activities for an hour or more. ECF No. 9 at 12 (citing Tr. 43-44). The premise for this argument is not correct – the consulting psychologist, Dr. Hyde, specifically addressed this issue. Her report assesses the panic attacks as a phenomenon that did not begin until after Plaintiff stopped working and that occurred only once a week, on Sunday night. Tr. 436. Dr. Hyde further opined that Plaintiff appeared only "somewhat anxious" and that her "[p]rognosis is positive." Tr. 437-38. There is no error in the ALJ's adoption of a finding of moderate limitations caused by Plaintiff's panic attacks, in reliance on the non-examining psychologist/psychiatrist, who in turn relied on Dr. Hyde.

Also well supported is the ALJ's finding that Plaintiff's hearing testimony – she stated that she is unable to leave her bed, only showers once a week, and changes her clothes twice a week, with both debilitating panic attacks and manic episodes every day, Tr. 43-48 – is directly contradicted by other parts of her testimony (such as her statements regarding her ability to go to her mother's house three or two days a week to visit and clean for her), Tr. 51, as well as by her statements in the Function Report (e.g., drives, but "[n]ot often," and shops at the "pharmacy or

---

[7] An MSE or a mental status examination is an objective clinical assessment of an individual's mental ability, based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022) (citation and internal quotation marks omitted), adopted by text order, (D.R.I. Mar. 31, 2022).

12

corner store," Tr. 243), and in the treating record (e.g., "cleaning houses," Tr. 460, 467, and "walking every day," Tr. 486).

Based on the foregoing, I reject Plaintiff's contention that the ALJ's findings are "incompatible with an equitable reading of the record." ECF No. 9 at 14. To the contrary, I find that this is a case where the Court "must uphold the Secretary's findings" because, "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Manuel P. v. Saul, C.A. No. 20-234PAS, 2021 WL 949345, at *2 (D.R.I. Mar. 12, 2021) (internal quotation marks omitted). Plaintiff's argument boils down to an invitation to the Court to reweigh the evidence, which I decline to do. See David H. v. Kijakazi, C.A. No. 21-333WES, 2022 WL 2816775, at *4 (D.R.I. July 19, 2022), adopted by text order, (D.R.I. Sept. 13, 2022).

Based on the foregoing, I find that this is a case in which the ALJ properly applied the law and made findings that are well supported by substantial evidence. I recommend that his decision be affirmed.

## IV.   Conclusion

Having reviewed the entirety of the record, I find that the ALJ's findings are consistent with applicable law and sufficiently supported by substantial evidence. Accordingly, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 9) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 10) be GRANTED. Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of

the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 26, 2023

14